## J. A. C. STEUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6350.   Promulgated October 31, 1946.

*Robert E. Samuels, Esq.*, and *Milton Yanowich, Esq.*, for the petitioner.

*James C. Maddox, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge*: The respondent bases his inclusion of the $56,-211.21 bonus in the petitioner's taxable income on the fact that the petitioner became a resident alien prior to the date on which he received that sum from Duys, pursuant to the contract of August 1940.

The petitioner contends that he possessed a claim against Duys for the amount in controversy, fully accrued, when he was a nonresident alien for services performed entirely by him while abroad, and that, therefore, he was not taxable thereon. He indulges in an elaborate analysis of the taxing statutes relating to the imposition of tax upon aliens, resident and nonresident, and attempts to contrast them with the provisions of section 22 (a) of the Internal Revenue Code. He then deduces that any income *earned* by him as a nonresident alien from sources without the United States is not subject to tax and that, if he was a nonresident alien at the time his services were performed for Duys, his exempt status attached when the income was earned and remained exempt after he became a resident alien on March 8, 1941.

The respondent held "that the amount of $56,211.21 received from Duys & Co., Inc., in 1941, subsequent to the date on which you [petitioner] became a resident alien, is subject to tax." The petitioner does not contest the fact of receipt, but argues that all of such sum except $13,619.69 was constructively received by him in 1940, prior to the taxable year and before he became a resident alien.

The vital point in this controversy is when the $56,211.21 in dispute became income to the petitioner. It is obvious that all payments made

under the prior agreement between Duys and the petitioner, then a Dutch citizen, providing that he should receive an annual salary of $10,000 and be paid a commission of 3 per cent on all purchases of tobacco made by him, were exempt from taxation. They were so treated by the respondent.

Therefore, the record and the contract of August 1940 must be examined critically to determine the petitioner's status as a resident alien and the character of the payments to be made to him under the contract. Prior to its execution the petitioner possessed only his rights to receive the stipulated salary and the 3 per cent commission. The contract created an entirely new situation. A bonus was granted to the petitioner, to be computed on the basis of 25 per cent of the net proceeds realized by Duys on the tobacco purchased by the petitioner. The amount of the bonus was to be established after the close of Duys' books on March 31, 1941. Duys offered to make payments of amounts "due" to the petitioner, at its convenience (and it might well have added "at its risk") during the book year of the corporation. The petitioner agreed not to buy or sell Sumatra or Java tobacco in American or Canadian markets out of the 1939 crop except for Duys' account.

The specific provisions of the contract limited the bonus, the income in question, to the amount determined on March 31, 1941. That amount might be based on prior purchases in the Dutch East Indies or purchases made in American or Canadian markets for Duys' account at any time before March 31, 1941. Whatever the source of the tobacco, the bonus was computed on the aggregate sale price of all tobacco sold by that date and the net profit resulting therefrom.

It is too patent for extended discussion that the definite amount of the bonus, and hence the income to the petitioner, could not have been determined before that date. While the prospect for a rising and profitable market might have been excellent in 1940, the market might have collapsed early in 1941, all previous paper profits on which the petitioner could collect his bonus might have been wiped out, and the 25 per cent of Duys' net profit might not have equaled the 3 per cent commission due to the petitioner under the original contract. Likewise, any excess payments which might have been advanced by Duys could have been subject to repayment by the petitioner upon the final computation of net profit.

We note that the petitioner kept his books and made his income tax return on the cash basis. We observe also that certain entries were made in Duys' books showing credits due to the petitioner for salary, buying commission, etc., and also an item called "Comm. $56,211.21" entered under date of March 31, 1941. These bookkeeping entries confirm our conclusion that the controverted item was not available to the petitioner until March 31, 1941, and hence did not become his income

until that date. Then, and not until then, did the sum assume the character of income to the petitioner, and consequently it could not have been taxed to him prior thereto. At that time he was a resident alien and subject to be taxed as such.

In view of our conclusion, we need not discuss the respondent's argument that the petitioner constructively became a resident alien in August 1940, or the petitioner's contentions relating to the alleged different bases of tax applicable to aliens and "individuals" (under sections 11 and 12, Internal Revenue Code.)

*Decision will be entered for the respondent.*